In the Matter of the Application of SAMUEL J. MITCHELL, Appellant, for a Peremptory Writ of Mandamus Directing WILLIAM A. PRENDERGAST, as Comptroller of the City of New York, Respondent, to Audit the Payroll for the Payment of the Salary of Said SAMUEL J. MITCHELL, as Under Sheriff and Acting Sheriff of the County of Queens, etc.

Second Department, June 22, 1917.

**Public officers — vacancies — when term of sheriff chosen at special election commences to run — mandamus — term " on or about " defined.**

The term of a sheriff chosen at a special election to fill a vacancy commences to run from the date of his election, notwithstanding the provision of section 180 of the County Law that there shall continue " To be elected in each of the counties a sheriff, * * * four coroners, * * * who shall respectively hold their offices for three years from and including the first day of January, succeeding their election."

Said provision of the County Law does not refer to an officer chosen to fill a vacancy, whether at a special or general election, but to the term of an officer chosen in regular course at a general election in November. It contemplates the beginning of the political year as prescribed by section 6 of article 10 of the Constitution.

The paramount aim of the Constitution and the statutes is to secure the filling of vacancies in elective offices by election at as early a day as is practicable.

Hence, where an under sheriff was chosen sheriff at a special election on January twenty-third, received his certificate on or about January thirtieth, and on February sixth swore to his oath of office, which was filed on February seventh, the day after his undertaking was officially received, and, in an application for a peremptory writ of mandamus to compel the audit of the payroll for his salary as under sheriff and acting sheriff, alleged in his affidavit that " on or about the fifth day of February, 1917, your petitioner, as acting sheriff of said county of Queens, duly certified the payroll," an order denying said writ should be affirmed as his affidavit is not sufficient to establish that he certified the payroll on February fifth so as to exclude February sixth, when he took the official oath and his bond was received, or February seventh, when the oath was filed.

The term " on or about " is with regard to time a relative term sufficiently definite in certain connections but rendering the statement which it modifies insufficient for purposes to which definite accuracy is requisite.

APPEAL by Samuel J. Mitchell from an order of the Supreme Court, made at the Queens County Special Term and entered in the office of the clerk of the county of Queens on the 29th day of March, 1917.

*Philip Frank,* for the appellant.

*William E. C. Mayer* [*Lamar Hardy, Corporation Counsel, Terence Farley* and *Edward S. Malone* with him on the brief], for the respondent.

JENKS, P. J.:

This appeal is from an order of the Special Term that denies a peremptory writ of mandamus. When Sheriff Stier, of Queens county, died on October 23, 1916, the relator was the under sheriff. Thereupon section 181 of the County Law (Consol. Laws, chap. 11; Laws of 1909, chap. 16) charged him in all things to execute the duties of the office as sheriff, and he undertook to do so. But his status continued only until the vacancy was supplied by election or appointment. (*People* v. *Snedeker,* 14 N. Y. 52, 59.) No appointment was made to fill the vacancy, but by proclamation of the Governor a special election was held on January 23, 1917, to fill it, and on that day the relator was elected sheriff. The return of the election to the Secretary of State was dated January 30, 1917, and the certificate of election, dated on that day, was issued to the relator. The relator took his oath of office on February 6, 1917, and filed it on February 7, 1917. His official bond, dated January 23, 1917, was filed on February 6, 1917. "On or about" February 5, 1917, the relator certified the payroll for the salaries of himself and the employees of his office for the first half of that month as acting sheriff of said county of Queens; but the payroll was rejected by the comptroller of New York city upon the ground that it should be certified by the relator as sheriff of the county of Queens. The argument of the relator is not confined to the precise day when he was clothed with the office of sheriff, but involves the contention that his term as sheriff does not begin until the 1st day of January, 1918.

The contention rests principally, if not altogether, upon

section 180 of the County Law, which I shall presently consider. The policy of the State with respect to vacancies in elective offices is to fill them by election at as early a period as practicable.   (*People ex rel. Weller* v. *Townsend,* 102 N. Y. 439.) To this end the Constitution provides, not only that sheriffs shall be elected once in three years, but as often as vacancies shall happen (Art. 10, § 1).   And section 5 of the same article prescribes that the Legislature shall provide for filling vacancies in office.   This policy is further made manifest by the provision of the same section that no person appointed to fill a vacancy in an elective office shall hold office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy.   Accordingly, the Legislature has provided for the filling of such vacancies at general elections and by special elections.   (Election Law [Consol. Laws, chap. 17; Laws of 1909, chap. 22], § 292, as amd. by Laws of 1911, chap. 891.)   This provision has received interpretation in *Matter of Mitchell* v. *Boyle* (219 N. Y. 242).   Neither Constitution nor statute, by direct, affirmative, specific provision, has prescribed when the term of a sheriff elected at a special election to fill a vacancy shall begin.   In the absence of such provision, I am of opinion that the term of the relator commenced to run from the date of his election.   (*Attorney-General ex rel. Haight* v. *Love,* 39 N. J. L. 476; *State of Ohio* v. *Constable,* 7 Ohio, 7; *Macoy* v. *Curtis,* 14 S. C. 367; *Prowell* v. *State ex rel. Hasty,* 142 Ala. 80; *State ex rel. Sawyer* v. *Pollner,* 18 Ohio Cir. Ct. 304.)   If the term of such an office did not begin until the 1st of January, 1918, then there would be no reason for providing for special elections, inasmuch as a general election would afford an incumbent elected by the people. The very fact that the Legislature has provided for a special election, a proclamation for which is mandatory (*Matter of Mitchell* v. *Boyle, supra*), indicates the contrary view. Although this precise point was not involved in *Matter of Mitchell* v. *Boyle* (*supra*), the discussion of that case (p. 249) plainly indicates that the court considered that the result of the special election would result in the early filling of the vacancy by election, by one whose term would thereupon begin.   The remarks of BRONSON, J., in *People* v. *Fisher*

(24 Wend. 215) are significant of his opinion as to the effect of an election similar to that now under consideration: " This space in which the office may not be filled by election can never exceed one year, and may sometimes amount only to a few days." Pursuant to the prescribed procedure, at the time in question a sheriff had been elected, had qualified and practically had entered upon office, for obviously he was discharging the duties of the office as far as possible. Despite his contention that he was *locum tenens*, it is not suggested that he could as sheriff practically do anything additional in such discharge. The comment of the court in *People* v. *Keeler* (17 N. Y. 370, 374) is pertinent: " It would be preposterous to say that the office was vacant when there was a person at hand who had been chosen by election in the manner required by the Constitution, whose term of service had commenced, and who stood ready to serve."

The relator relies, as I have said, upon an express provision of the statute, in that the said section 180 of the County Law (as amd. by Laws of 1916, chap. 87) reads that there shall continue " To be elected in each of the counties a sheriff, * * * four coroners, * * * who shall respectively hold their offices for three years from and including the first day of January succeeding their election." This provision refers, I think, not to an officer chosen to fill a vacancy, whether at a special or general election, but to the term of an officer chosen in regular course at a general election in November. It contemplates the beginning of the political year, as prescribed by section 6 of article 10 of the Constitution. It seems to me that such is the case appears from the provisions of section 4 of the Public Officers Law (Consol. Laws, chap. 47; Laws of 1909, chap. 51), which is the more organic statute. This provides: " The term of office of an elective officer, *unless elected to fill a vacancy then existing*, shall commence on the first day of January next after his election." And this specific exception shows obviously that the term of this officer does not commence on the 1st day of January, 1918. The paramount aim in construction of these provisions is to secure the filling of vacancies in elective offices by election at as early a day as is practicable, and my construction is in harmony with the principles so admirably stated by

FOLGER, J., for the court in *People ex rel. Jackson* v. *Potter* (47 N. Y. 375, 379).

So far as the precise question in this case is concerned, the relator, as I have said, was elected on January 23, 1917, received his certificate on or about January 30, 1917, and on February 6, 1917, swore to his oath of office, which was filed on February 7, 1917. His undertaking was received officially on the day prior thereto. The payroll was certified, according to the relator, " on or about the 5th day of February, 1917." This, in any event, might be regarded as a statement that the payroll was certified in the month of February, and so after the election, the issue of the certificate thereof, and obviously while the relator was discharging the duties of a sheriff. Even conceding that he certified the payroll *on* February 5th, I think that he must be regarded as the sheriff on that day. (*Macoy* v. *Curtis, supra,* 375 *et seq.; State ex rel. Sawyer* v. *Pollner,* 18 Ohio Cir. Ct. 304, 310 *et seq.* See, too, *Horton* v. *Parsons,* 37 Hun, 45; *People ex rel. Woods* v. *Crissey,* 91 N. Y. 636; *Foot* v. *Stiles,* 57 id. 399; Pub. Off. Law, § 15.) And further, the relator moves for a peremptory writ of mandamus in that he had acted within the law. That act purported to be an official doing in writing. It is hard to credit that he did not know, or at least could not inform himself of the exact date thereof. And yet he deposes that " on or about the 5th day of February, 1917, your petitioner, as Acting Sheriff of said County of Queens, duly certified the payroll." Even if there were any force in relator's contention that he was not the sheriff on February 5th because he had not then taken his oath of office or had not then filed his undertaking, I think that his affidavit is not sufficient to establish that he certified the payroll on February 5th so as to exclude February 6th, when he took the official oath and his bond was received, or February 7th, when the oath was filed. " On or about " is " With regard to time, a relative term, sufficiently definite in certain connections, but rendering the statement which it modifies insufficient for purposes to which definite accuracy is requisite." (29 Cyc. 1492.) In *Paine* v. *Com. State Land Office* (66 Mich. 245, 248), the court, per CAMPBELL, C. J., say: " But ' on or about ' March 8 is just as consistent with a day or two after as before." (See, too, *Conroy*

*v. Oregon Construction Co.,* 23 Fed. Rep. 71, 73.)   Concededly, every formality had been complied with by the end of February, 1917.

I advise affirmance, with ten dollars costs and disbursements.

THOMAS, STAPLETON, MILLS and RICH, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.